UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LIST INDUSTRIES, INC., Plaintiff(s), v. LARRY LIST, Defendant(s). | Case No. 2:17-CV-2159 JCM (CWH) ORDER |

Presently before the court is plaintiff List Industries Inc.'s *ex parte* motion for a temporary restraining order (TRO) (ECF No. 3) and *ex parte* motion for a preliminary injunction (ECF No. 4). Plaintiff requests this court to enjoin defendant Lawrence (Larry) List from "contacting, intimidating or otherwise interfering in any way with any employee, agent, representative, vendor, distributor, customer and potential vendor, distributor or customer of List Industries, and any of their subsidiaries, in any form or fashion, including, but not limited to, in person, by letter, e-mail, text, any social media and by telephone and/or fax, for any reason, pending the outcome of this action." (ECF No. 3 at 1).

**I. Facts**

On August 11, 2017, plaintiff filed its complaint against defendant. (ECF No. 1).

On August 15, 2017 plaintiff filed the instant motions for a TRO and motion for a preliminary injunction. (ECF Nos. 3, 4). On the same day, plaintiff filed affidavits in support of the motions. (ECF Nos. 5, 6).

On August 23, 2017, plaintiff filed an affidavit of service indicating that plaintiff personally served defendant Lawrence (Larry) List the instant motions for a TRO and preliminary injunction

James C. Mahan
U.S. District Judge

on August 16, 2017. (ECF No. 9). Although defendant has notice of both motions, he has not been heard on them.

The motions for a temporary restraining order and preliminary injunction (ECF Nos. 3, 4) allege the following facts. Defendant Larry List is one of the grandsons of the founder of List Industries and, at one point many years ago, owned shares in List Industries, but his interest was repurchased in full. (ECF No. 3 at 2). "Sadly, [Larry's brother] and the representatives of List Industries are informed and believe that Larry has succumbed to a disease, most likely alcoholism, and become increasingly hostile, obscene and threatening toward [his brother JR, the president of List Industries], other representatives of List Industries and the vendors, distributors and customers of the Company. . . . Larry clearly seeks to defame his brother and those who manage and work for List Industries . . . ." *Id.* "List Industries has endured attacks from Larry since 2012, but even proceedings in a lower court have not stopped his behavior." *Id.* at 3. Larry has left "threatening and obscene messages on List Industries' counsel's voicemail system, filled with threats, personal insults, and profanity. *Id.* "Larry's messages became so vile and personal that eventually Florida counsel became concerned for the safety of his staff and implemented security precautions at this office." *Id.* "After a brief respite, by 2015, Larry's threats, via e-mail and voice mail, were arriving on the Company's website and on its employees' voice mails." *Id.* List Industries, on behalf of JR List (Larry's brother) personally, obtained a temporary protective order (TPO) from the Henderson Justice Court in Nevada, and notified the FBI. *Id.* "Despite the TPO, Larry's harassing phone calls and messages continued, specifically accusing List Industries of selling defective lockers and performing substandard installations. . . . Larry went so far as leaving a threatening, profanity laced message with J R Lists's golf club and another obscene and insulting message with a female representative of a Company client." *Id.*

The motions continue, alleging further threatening and defaming communications from defendant Larry List to, among other people, List Industries employees, customers, business partners, vendors, and distributors. *Id.* at 3–9. The motions allege that he even sent a false lead to a detective at Penn State University attempting to tie List Industries' product to the Jerry Sandusky

James C. Mahan
U.S. District Judge

scandal. *Id.* Many of these communications allegedly contained threatening and profane language. *Id.*

One of the allegations is that on or about December 21, 2016, "Larry sent an e-mail to a [List Industries] customer which alleged it could not legally sell List Industry products and threatened to hold that customer 'responsible' for doing so." *Id.* at 4. Another specific allegation is that on May 25, 2017, "Larry sent an e-mail to fifteen (15) of List Industries' business partners, demanding that Colin List 'resign' and alleging that Colin List is a 'sexual pervert', Colin 'verbally sexually assaulted' him, along with another List employee, J R List physically assaulted him, and he had been 'violated, harassed and ripped off' by List Industries." *Id.* at 5.

Plaintiff also cited various hyperlinks to audio files on the internet that plaintiff purports represent true and correct copies of voice mail messages from Larry List. (*See, e.g.*, ECF No. 5 at 2). But plaintiff has not provided the court with a physical copy of these files, such as on a CD or other electronic information storage device. Therefore, they are not part of the record: "Neither a hyperlink nor any site to which it refers will be considered part of the official record. Hyperlinks are simply convenient mechanisms for accessing material cited in a filed document. If a party wishes to make any hyperlinked material part of the record, the party must attach the material as an exhibit." LR IA 7-3(c)(2). Regardless, because this court denies the instant motions on other grounds, this court can assume for the purposes of these motions that the audio records contain threatening, profane, defamatory messages from Larry List as plaintiff alleges.

## II. Legal Standard

### *a. The First Amendment: Prior Restraints, Overbreadth, and Vagueness*

"Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. While it is true that no one "would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot," *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940))—or, perhaps as the plaintiff alleges here, the tortuous interference with contracts—it is equally true that "[a] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand," *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546,

559 (1975). Indeed, the United States Supreme Court has declared that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976); *see also Tory v. Cochran*, 544 U.S. 734 (2005).

"The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communication are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original) (internal quotation marks omitted) (citation omitted). "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." *Id.* A prior restraint bears a "heavy presumption against its constitutional validity." *See New York Times v. United States*, 403 U.S. 713, 714 (1971) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

The problem of prior restraints is multiplied when a court issues one before a proper trial on the merits. "[A] preliminary injunction poses a danger that permanent injunctive relief does not: that potentially protected speech will be enjoined prior to an adjudication on the merits of the speaker's or publisher's First Amendment claims." *DVD Copy Control Ass'n, Inc. v. Bunner*, 75 P.3d 1, 21 (Cal. 2003), *as modified* (Oct. 15, 2003) (Moreno, J., concurring) (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973) (noting that an order did not "endanger arguably protected speech" because, in part, "no interim relief was granted, the order will not have gone into effect before our final determination that the actions of the Pittsburgh Press were unprotected")).

Another problem with preliminary injunctions and temporary restraining orders that restrict speech is that a person who violates a court order risks punishment even if the order itself is later deemed unconstitutional: "[A] court order must be obeyed until it is set aside, and . . . persons subject to the order who disobey it may not defend against the ensuring charge of criminal contempt on the ground that the order was erroneous or even unconstitutional." Stephen Barnett, *The Puzzle of Prior Restraint*, 29 Stan. L. Rev. 539, 552 (1977) (citing *United States v. Dickinson*, 465 F.2d 496 (5th Cir. 1972)).

Indeed, in *Carroll v. President and Comm'rs of Princess Anne*, the United States Supreme Court declared unconstitutional a 10-day restraining order "issued ex parte, without formal or informal notice to the petitioners or any effort to advise them of the proceeding." 393 U.S. at 181. Likewise, in *Quantity of Copies of Books v. State of Kansas*, the supreme court held unconstitutional the seizure of allegedly profane books because the court did not first afford the seller of the books an adversary hearing. 378 U.S. 205, 211 (1964).

Further, any restriction on speech must be narrowly tailored to achieve its lawful purpose; it must burden no more speech than necessary to accomplish its desired goals. *Madsen v. Women's Health Center*, 512 U.S. 753, 765 (1994). That means an order restricting speech must be "couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." *Carroll*, 393 U.S. at 183.

Furthermore, a law—or as here, a court order—restricting speech is unconstitutionally vague if people "of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." *See Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).

There exists a centuries-old maxim that "equity does not enjoin a libel," which, having enjoyed widespread acceptance at common law, historically has meant that the only remedy for defamation or libel was an action at common law for damages. Aaron H. Caplan, *Free Speech and Civil Harassment Orders*, 64 Hastings L.J. 781, 825 (2013) (*citing Francis v. Flinn*, 118 U.S. 385, 389 (1886); *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987); DAN B. DOBBS, 2 LAW OF REMEDIES § 7.2(14) (2d ed. 1993)). Upon the ratification of the Bill of Rights, it was widely understood that the First Amendment incorporated the ban on libel injunctions. *Id.* While some states have created an exception to this rule—that the law should allow a *final* injunction against repeated specific falsehoods proven to be defamatory at trial—most courts have rejected the exception. *Id.* The United States Supreme Court has declined to squarely answer the question, and circuits and states appear to be split on the issue.[1] *Id.* This

[1] This order takes no position on the constitutionality of final injunctions on speech after a full trial on the merits. *See Auburn Police Union v. Carpenter*, 8 F.3d 886 (1st Cir. 1993) ("An injunction that is narrowly tailored, based upon a continuing course of repetitive speech, and granted only after a final adjudication on the merits that the speech is unprotected does not constitute an unlawful prior restraint."); *Balboa Island Village Inn, Inc. v. Lemen*, 156 P.3d 339

James C. Mahan
U.S. District Judge

order need not answer this larger question now, however, as it addresses a narrower one: whether the plaintiff is entitled to the specific temporary restraining order and preliminary injunction it seeks, *ex parte* and before a trial on the merits, which would restrict defendant's speech.

*b. Elements Required for a TRO or Preliminary Injunction*

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65. "Injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Shelton v. Nat'l Collegiate Athletic Assoc.*, 539 F.2d 1197, 1199 (9th Cir. 1976). "The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

This court must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v.*

---

(Cal. 2007), *as modified* (Apr. 26, 2007) (holding that an injunction prohibiting defendant from repeating speech determined by a finder of fact, after a trial on the merits, to be slanderous or defamatory was not a prior restraint, but nonetheless reversing because the injunction issued was overbroad); *Flint v. Smoke Burner Co.*, 19 S.W. 804, 806 (Mo. 1892) ("After verdict in favor of the plaintiffs, they can have an injunction to restrain any further publication of that which the jury has found to be an actionable libel or slander."); *see also DVD Copy Control Assn., Inc. v. Bunner*, 75 P.3d 1 (Cal. 2003) (Moreno, J., concurring) ("a preliminary injunction poses a danger that permanent injunctive relief does not; that potentially protected speech will be enjoined prior to an adjudication on the merits of the speaker's or publisher's First Amendment claims."); *but see Kramer v. Thompson*, 947 F.2d 666, 670 (3rd Cir. 1991) (holding that the Pennsylvania Constitution prohibits a judge from enjoining future libelous speech, but noting that "[t]he United States Supreme Court has held repeatedly that an injunction against speech generally will not be considered an unconstitutional prior restraint if it is issued after a jury has determined that the speech is not constitutionally protected"); *Kinney v. Barnes*, 443 S.W.3d 87, 94–99 (Tex. 2014) (holding that a permanent injunction as a remedy in a defamation case is an impermissible prior restraint on speech); *see also Tory v. Cochran*, 544 U.S. 734 (2005) (declining to answer this question and ruling on other grounds); *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 606 (7th Cir. 2007) (same, citing *Tory*).

*Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994); Fed. R. Civ. P. 65 (governing both temporary restraining orders and preliminary injunctions). The party seeking the injunction must satisfy each element.

The party seeking the injunction must satisfy each element; however, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135 (internal quotations marks omitted).

Finally, to obtain injunctive relief, plaintiff must show it is "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)).

*c. Notice and Opportunity to Be Heard*

"The stringent restrictions imposed by . . . Rule 65[ ] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438–39 (1974). "Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Also, to apply for an *ex parte* TRO, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

The first and foremost requirement for a preliminary injunction is notice: "(1) ***Notice.*** The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P.

65(a)(1). Rule 65(a)(1)'s notice requirement "necessarily requires that the party opposing the preliminary injunction has the opportunity to be heard and to present evidence. . . . Moreover, compliance with Rule 65(a)(1) is mandatory." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (quoting *Harris Cty., Tex. V. CarMax Auto Superstores Inc.*, 177 F.3d 306, 325 (5th Cir. 1999); *Parker v. Ryan*, 960 F.2d 543, 544 (5th Cir. 1992)); *see also Reno Air Racing*, 452 F.3d at 1130–32 (discussing the circumstances in which an *ex parte* proceeding under Rule 65, without notice, may be appropriate). Therefore, Rule 65 "provides that the court may not issue a preliminary injunction without notice and an opportunity to be heard . . . ." *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1322 (9th Cir. 1985), *amended on other grounds*, 775 F.2d 998 (9th Cir. 1985). Thus, a motion for a preliminary injunction cannot be heard and granted *ex parte*.

## III. Discussion

### *a. First Amendment: Prior Restraints, Overbreadth, and Vagueness*

The preliminary injunctive relief requested here cannot be granted because it would constitute an unconstitutional prior restraint on speech that is both overbroad and vague. Plaintiff requests an injunction forbidding the defendant from "contacting, intimidating or otherwise interfering in any way with any employee, agent, representative, vendor, distributor, customer and potential vendor, distributor or customer of List Industries, and any of their subsidiaries, in any form or fashion, including, but not limited to, in person, by letter, e-mail, text, any social media and by telephone and/or fax, for any reason, pending the outcome of this action." (ECF No. 3 at 1).

The requested injunction would constitute a prior restraint on speech because it would order the defendant to refrain from speech—on penalty of contempt—before speaking. There has been no trial or adjudication of the merits of defendant's First Amendment rights, and caselaw imposes the strictest possible scrutiny to injunctions restricting speech issued before trial. Further, this court is aware of no binding or persuasive caselaw deeming a prior restraint on speech issued by a court pretrial and *ex parte* to be constitutional.

Even if granting an injunction on speech pretrial and *ex parte* stood constitutional muster, the injunction requested here would not survive the strict scrutiny such an order must endure.

First, the plaintiff's proposed language for the injunction is overbroad in the extreme. It would prohibit plaintiff from "contacting, intimidating, threatening or otherwise interfering *in any way with any* employee, agent, representative, vendor, distributor, customer and *potential* vendor, distributor or customer of List Industries, and any of their subsidiaries, *in any form or fashion*, including, *but not limited to*, in person, by letter, e-mail, text, any social media and by telephone and/or fax, *for any reason*, pending the outcome of this action." (ECF No. 3 at 1) (emphasis added). Thus, this order would prohibit defendant from "contacting," in any form or fashion, for any reason, by virtually any medium of communication, virtually any person or entity that may now or in the future do business with the defendant. Even if this court assumes, without deciding, that the speech about which plaintiff complains in its motions is unprotected by the First Amendment, this prior restraint would reach far beyond and is thus constitutionally invalid as overbroad.

Second, the requested order is vague. For instance, the defendant might not always know if an entity or person qualifies as a "potential vendor" or "customer" of List Industries. Nor will he always know if his conduct is "intimidating" or otherwise generally "interfer[es]" with another person or entity. *Cf. Coats v. City of Cincinnati*, 402 U.S. 611–14 (1971) (holding that an ordinance was vague that prohibited people on a sidewalk from "conduct[ing] themselves in a manner annoying to persons passing by" because "[c]onduct that annoys some people does not annoy others").

Therefore, the requested injunction would be an unconstitutional prior restraint.

*b. Temporary Restraining Order Elements*

The motions also fail the four-element test for a TRO and preliminary injunction.

i. Irreparable injury

Plaintiff has demonstrated irreparable injury: it appears that defendant's continued interactions with plaintiff's customers, vendors, and other business relationships will likely cause a loss of goodwill, loss of income, and damage to plaintiff's business relationships that a money

judgment following a trial would not adequately redress. Defendant's emails and other communications with plaintiff's customers and vendors appear on their face to be outlandish and needlessly harmful to plaintiff's business.

However, plaintiff has failed to show that a favorable ruling on these motions would redress the harm. Plaintiff admits that the Henderson Justice Court already issued a temporary protective order (TPO) related to this same conduct but "was essentially unable to enforce its Order or stop Larry at all." (ECF No. 3 at 4). Plaintiff admits that "List Industries has endured attacks from Larry since 2012, but even proceedings in a lower court have not stopped his behavior," and that "[d]espite the TPO, Larry's harassing phone calls and messages continued . . . ." *Id.* at 3.

Plaintiff claims it even contacted the FBI. However, plaintiff has not explained how this court would succeed in quelling defendant's behavior where the FBI has not.

Finally, to the extent that plaintiff might present actual safety or security concerns—which is not clear to the court from this current record—plaintiff must continue to seek aid from local or federal law enforcement, not a prior restraint on defendant's speech.

ii. Balance of hardships

The balance of hardships weighs against plaintiff. On one hand, plaintiff continues to suffer defendant's frequent, apparently intolerable interference with its business relationships, which may be difficult—if not impossible—to repair. It seems as though plaintiff will have difficulty stopping this problem from continuing. That said, plaintiff has not convinced the court that the requested injunction would solve its problem.

On the other hand, plaintiff requests this court to issue an overbroad, vague, prior restraint on defendant's speech before hearing from the defendant and before a trial on the merits of whether his speech is unlawful or protected by the First Amendment. The United States Supreme Court has declared that "prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Assn.*, 427 U.S. at 559. The requested injunction would be just that.

Although plaintiff presents a sympathetic case, this court cannot rule that plaintiff's hardship outweighs defendant's First Amendment rights. Thus, plaintiff has not shown that the balance of hardships weighs in its favor.

iii. The public interest

The public interest here leans heavily in favor of denial of the instant motions. On one hand, Nevada law protects plaintiff from defendant's intentional, unjustified interference with its business dealings and alleged verbal harassment of plaintiff. Also, the public has a strong interest in the plaintiff's ability to obtain a timely solution to this problem. However, an *ex parte* preliminary injunction in the form of a broad, prior restraint as requested here is not the most effective or desirable solution. Nor would it be constitutional. The public has an unflinching interest in its freedom from prior restraints on speech, which is nothing short of a fundamental freedom of American democracy. *See* U.S. Const. amend. I. Accordingly, the public interest weighs heavily against issuance of the requested TRO and preliminary injunction.

iv. Potential for success on the merits

Regardless of whether plaintiff demonstrates a likelihood of success on the merits at trial, the requested preliminary injunctive relief cannot issue because plaintiff has failed to show that the public interest or balance of hardships weigh in its favor.

*c. Notice and Opportunity to Be Heard*

In addition to the other defects discussed by this order, this court cannot grant the motions because defendant has not been heard.

Courts have recognized very few circumstances justifying the issuance of an *ex parte* TRO. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). This is not one of those very few circumstances justifying an *ex parte* TRO—to the contrary, this circumstance heavily warrants hearing from the defendant before restricting his speech. Therefore, the court will not grant the motion for a TRO *ex parte*. (ECF No. 3).

Further, a motion for a preliminary injunction cannot be heard *ex parte*. *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1322 (9th Cir. 1985), *amended on other grounds*, 775 F.2d 998 (9th Cir. 1985); Fed. R. Civ. P. 65(a)(1).

Nonetheless, the plaintiff filed the instant motion for a preliminary injunction (ECF No. 4) "ex parte," depriving the defendant of the opportunity to be heard on the matter. This motion must also be denied. (ECF No. 4).

**IV. Conclusion**

The requested injunction would constitute an unconstitutional prior restraint. Further, plaintiff has failed to demonstrate multiple required elements necessary for this court's extraordinary equitable intervention in the form of a TRO and preliminary injunctive relief. Finally, even if the motions had merit, this court could not grant either in an *ex parte* fashion.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for a temporary restraining order (ECF No. 3) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for a preliminary injunction (ECF No. 4) is DENIED.

DATED August 30, 2017.

James C. Mahan
UNITED STATES DISTRICT JUDGE